UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| STANLEY OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 06-521-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FEDERATED MUTUAL INSURANCE | ) | **MEMORANDUM OPINION** |
| COMPANY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of the Defendant Federated Mutual Insurance Company's ("Federated") motion for summary judgment. [Record N o. 18] Plaintiff Stanley Oliver ("Oliver") brought this action against Federated on claims of workplace discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., the Kentucky Civil Rights Act, and a state law claim for wrongful discharge in violation of Kentucky public policy. Because Oliver has failed to present direct evidence of discrimination or circumstantial evidence to show that Federated's proffered reason for terminating him was a pretext for discrimination, the Court will grant the Defendant's motion for summary judgment. Further, because the wrongful discharge claim is preempted by the statutory claims, the Court will grant the Defendant's motion regarding the remaining state law claim.

## I.      BACKGROUND

This case arises from Oliver's termination of employment in 2006. Oliver began working at Federated in June 1990 at the age of 40. Federated is a multi-line insurance company specializing

-1-

in providing commercial insurance to businesses.  During his tenure with the company, Oliver worked in various positions, including Senior Loss Control Consultant, Risk Consultant I, and Risk Consultant II.  Oliver received a number of promotions during his sixteen years with the company. In September 2000, at the age of 51, Oliver obtained the position of Risk Consultant III.  As a Risk Consultant III, Oliver was responsible for examining an insured's property, identifying all potential risks, providing strategies to reduce those risks, and providing information to Federated's Underwriting Department to ensure that the pricing of the insurance product properly reflects all known risks.  Oliver was responsible for handling all of Federated's customers in Kentucky, part of West Virginia and LP gas customers in Ohio.[1]

For the first five years of his employment with Federated, Oliver was supervised by Mike Bozsoki, a Regional Risk Manager ("RRM").  Due to document retention policies, Federated does not have all of Oliver's performance reviews during his employment with the company.  However, Federated does not dispute that "for a significant part of his career, [] Oliver appeared to be a functional risk consultant." [Record No. 18, p. 4] Notably, under Bozsoki's supervision, Oliver received all satisfactory performance ratings.

In 1995, the company underwent a territory realignment resulting in Jerry Olander becoming Oliver's RRM.  On November 29, 2001, Olander formally reviewed Oliver's perforamnce.  In the review, Olander noted that Oliver's previous overall rating was E or "exceeds expectations.[2]"

---

[1]      Some insureds had LP gas on their property.  Because LP gas creates unique problems for Federated in evaluating and minimizing risk, some Risk Consultants received specialized training to evaluate LP gas. Oliver received that specialized training in 1992 or 1993 and, therefore, covered Ohio in terms of LP gas work from 2004 until Will Hungerford was certified in that type of work.

[2]      "E" stands for "Exceeds Expectations" and is equivalent to the later-used designation "EC," which stands for "Exceptional Contributor."  This category is defined as "highly skilled, knowledgeable performer and positive role model whose performance consistently surpasses the objectives and expectations of the

However, based on his review, Olander decreased Oliver's rating to E-.  Although Olander rated

Oliver's work as exceptional in a number of areas, he noted that there were some specific areas in

which Oliver needed to improve.  Additionally, Olander noted that there had been recent changes

in the insurance business and that Oliver needed to make dramatic changes to address these new

concerns.  Specifically, Olander wrote:

> Numerous uncontrollable forces within the industry and economy as well as problems within our book of business have made it necessary to make adjustments to field services priorities.  As an example, for a period of time our focus was helping marketing sell new business and living up to the promises we made during the sales process.  Consequently, as a department we temporarily lost sight of the importance of completing new business surveys which are essential for underwriting to make good fundamental underwriting decisions and of providing service to our critical accounts.  These dynamics appear to have adversely affected the loss ratio on our entire book of P & C business necessitating some major operating changes.  This flip flopping of priorities has created the need for new administrative reporting procedures, new planning and scheduling requirements, more numbers to monitor and manage, and in general more responsibility packed into each work day for the risk consultants.
>
> While you work hard and put in long hours in order to provide a high level of service to your customers and marketers, these changes to your established routine, your priority focus, and your overall responsibilities, have created quite a lot of anxiety, aggravation and frustration for you which in turn, has resulted in delayed transmitted reports and a downturn in your daily production.  It is important to remember that these intensified disciplines were designed to address our corporate macro issues in these troubled economic times.  The bottom line is that we must all recognize the necessity for continual change or we will find ourselves sailing down the "river of no return" as have 31 other property and casualty companies that were declared insolvent this past year.

[Record No. 18, Att. 12]

---

position."

On July 29, 2003, Olander again reviewed Oliver's performance and decreased his overall rating to a SC+.[3]  While Olander noted Oliver's strengths in certain areas, he also concluded that Oliver needed to make improvements, including meeting the minimum 40 hours of face time a month, transmitting reports on time, and reducing the number of office days. [Record No. 18, Att. 14]  Olander formally reviewed Oliver's performance again on November 26, 2003.  Once again, he lowered Oliver's overall rating to SC and noted that he still needed to make improvements in the areas of face time, delinquent reports, the number of office days, and the timely transmission of work.

On November 2, 2004, Olander again performed an evaluation and again rated Oliver's overall performance as SC. Olander noted in his review that: "[t]here were seven goals listed on [the] 11-03 performance review.  Most were satisfactorily complete, however, you still need to focus on the face time expectation and getting work completed and transmitted on time in order to reduce delinquencies showing up on the PALC report."  [Record No. 18, Att. 16]  Olander further stated that:

> This has been a particularly challenging year for you.  Building a new home required a great deal of your time.  In addition, some family issues and your mother's health problems and subsequent death made it difficult for you to perform at the level that we are used to seeing from you.  For a period of time your administrative reports were quite often not submitted on time and your filed work was not being processed in a timely manner.  Just last month, prior to the Atlanta REMES meeting you had a heavy backlog of delinquent field work that required many extra catch up office days.  This review period you've often had delinquent work on the monthly PALC report.  You have struggled from month to month for 40 hours face time, you have carried work over frequently that should have been completed on your Friday office days and you often needed extra office days to get your administrative work caught up. In other words, you have struggled this review period to balance personal issues

---

[3]      "SC+" stands for "Successful Contributor plus" and is defined as "competent and valued performer who consistently meets the objectives and expectations of the position.

with work responsibilities.  You have managed to get the job done and "keep your head above water," however, you have not operated your territory as efficiently and effectively as you have in previous review periods.

I am confident that you are now on track to have your territory once against operating as the well oiled machine that has consistently been your trademark year after year.

[Record No. 18, Att. 16]

In January 2005, Andy Shockey replaced Olander as Oliver's RRM.  In March 2005, Boyd Wissbroecker, Home Office Manager, Field Services, received Oliver's work file from 2004 on the LP gas survey for Bennett Distributing.  Wissbroecker states that he received the file from one of his colleagues, Mr. Hungerford, who had some concerns about Oliver's performance.  [Record No. 31, Att. 4]  After reviewing the file, Wissbroecker notified Shockey and suggested that he audit a random sample of surveys completed by Oliver on LP gas work.  In doing so, Shockey "found serious deficiencies" in Oliver's work. [Record No. 18, Att. 20]  Specifically, Shockey notified Oliver that his "work d[id] not meet the quality expectation that is vital to our profitability efforts in the LP gas dealer TOB." [Record No. 18, Att. 22]  Federated, however, opted to retrain Oliver on this segment of the business.

Under Shockey, Oliver's performance ratings continued to decline.  On November 11, 2005, Shockey formally reviewed Oliver's performance and gave him an overall rating of NI or "Needs Improvement.[4]"  This was the lowest rating that Oliver had received during his employment with Federated.  With regard to LP gas work, Shockey found that:

A review of your LP gas work by Home Office Field Services Staff and myself yielded significant quality issues.  You were sent back for re-training in May 2005.

---

[4]      "Needs Improvement" is defined as "improvement required to meet the objectives and expectations of the position."

> Since the training you have been submitting each piece of LP work to me for review prior to exporting.  While your work does show signs of improvement, the overall quality of your LP work needs to continue to improve  . . .  A review of a random sample of your non-LP work has also pointed to significant quality issues.

[Record No. 18, Att. 23]  Shockey addressed the goals established by Olander, specifically noting that Oliver was still not meeting the face time requirement or timely transmitting reports and work. [Record No. 18, Att. 23]  Oliver acknowledged that he did not "hit [his] goals." [Record No. 18, Att. 6, p. 75]  However, he stated that he believed these goals were merely "aspirational." [Record No. 18, Att. 6, p. 75]  Further, he believed that Shockey should have taken into account the amount of improvement that he had made during the year.

Following the NI rating, Oliver was placed on a 90 day Performance Improvement Plan ("Plan").  The Plan set forth Federated's "expectations." [Record No. 18, Att. 24]  Further, it provided that:

> [W]e will review your progress in a bi-weekly telephone conversation.  During these conversations we will discuss results and future action plans, as well as, any issues that might surface.  A formal review of your results will be prepared and discussed with you the first week of January and final assessment of performance results will be provided during the week of February 20th.  If you are unable to improve and sustain your performance at a successful contributor level your employment with Federated may be ended.

[Record No. 18, Att. 24]

In January 2006, Anthony Byers replaced Shockey as Oliver's RRM.  Prior to his departure, Shockey performed a mid-point review of Oliver's progress under the Plan.  Again, Oliver was notified that "key areas of [his] performance continue[d] to be below standard." [Record No. 18, Att. 25]  At the conclusion of the period under the Plan, Byers and John Coaker, Byers' supervisor, determined that Oliver had not fulfilled the requirements of the Plan.  Federated notified Oliver that

he could opt for early retirement.[5]  Oliver retired from the company on March 15, 2006, at the age of 56.  On September 11, 2006, Federated hired Lonnie Platt[6] as a Risk Consultant in Oliver's former territory.

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

"Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).   The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits to support its claims.  *Celotex*, 477 U.S. at 324.  In making this determination, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.  Ultimately, the standard for determining whether summary

---

[5]      Federated concedes that Oliver would have been terminated if he had chosen not to retire.

[6]      At the time of his hire, Platt was in his thirties.

judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) quoting *Anderson*, 477 U.S. at 251-52.

## III.   DISCUSSION

### A.   ADEA and KCRA Claims

Federated has moved for summary judgment on Oliver's ADEA and KCRA claims, arguing that he has: (1) failed to present direct evidence of age discrimination; (2) failed to establish a prima facie case of age discrimination based on circumstantial evidence because he was not qualified for the position; and (3) has failed to establish that Federated's articulated reason for the termination was a pretext for discrimination. Federated further asserts that it is entitled to summary judgment on the wrongful discharge claim because it is preempted by the ADEA and KCRA claims.

Both the ADEA and the KCRA make it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); K.R.S. § 344.040(1) and (2).[7] A plaintiff may establish a claim under the ADEA and/or KCRA by offering either direct or circumstantial evidence of discrimination. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). "Direct evidence of discrimination is that 'evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's action.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)

---

[7]   The Kentucky Civil Rights Act's discrimination provisions "track [ ] federal law and should be interpreted consonant with federal interpretation." *Gragg v. Somerset Technical College*, 373 F.3d 763 (6th Cir. 2004) (citing *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814 (Ky. 1992)). Accordingly, the Court will analyze these claims simultaneously.

(quoting *Jacklyn v. Schering-Plough Health Care Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).  If a plaintiff cannot provide direct evidence of improper motive, he may offer indirect and circumstantial evidence of such a motive under the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

### 1.      Direct Evidence

Oliver contends that John Coaker, Field Operations Manager,[8] made statements to him that constitute direct evidence of discrimination.  According to Oliver, he had a conversation with Coaker in which he raised concerns that Shockey was trying to get rid of him.  In particular, Oliver states that he told Coaker that Shockey was "picking on him" and that, in response, Coaker shrugged off his concerns and stated, "[y]ou know, old guys like us, you and me, we can't type as fast as those younger guys." [Record No. 30, p. 130; Record No. 23, p. 45]  Oliver argues that, because Coaker played a role in the termination decision, his statements are direct evidence of a discriminatory motive.

In general, an employer's comments referring directly to a plaintiff's age may support an inference of age discrimination.  *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020 (6th Cir. 1993).  However, the Sixth Circuit has consistently held that age-related statements are inadmissible if they "are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 n. 2 (6th Cir. 1986) (statements regarding young people taking over in management and indicating a negative view of "old-timers" held irrelevant and unduly prejudicial).  Moreover, the Sixth Circuit has held that "'statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [can not] suffice to satisfy

---

[8]      Oliver was supervised by various RRMs.  Coaker was the supervisor for the RRMs.

the plaintiff's burden . . .' of demonstrating animus." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989)).  In the present case, although Coaker was involved in the decision to terminate Oliver, his isolated comment that "old guys like us, you and me, we can't type as fast as those younger guys" is too ambigous and abstract to demonstrate a predisposition to discriminate based upon age and is insufficient to establish direct evidence of age discrimination.

### 2.        Indirect Evidence

Age discrimination claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* framework.  Under this approach, a plaintiff must first show that: (1) he was a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the position he held; and (4) he was replaced by a younger person.  *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1115 (6th Cir. 2001).  If the plaintiff is able to establish a prima facie case of age discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for any adverse employment action.  *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004).  If the defendant provides a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the reason given by defendant was merely a pretext for decisions actually motivated by unlawful bias against age.  *Id.*

### a.        Prima Facie Case

Oliver satisfies the first two elements of the prima facie case.  At the time he was asked to retire, Oliver was 56 years old and was within the protected class (i.e., employees age forty and over).  Further, he was subjected to an adverse employment action inasmuch as Federated has

acknowledged that Oliver would have been fired if he had not taken early retirement.[9]  Federated argues that Oliver has failed to satisfy the third and fourth elements of the prima facie case. Specifically, Federated contends that Oliver has not established that he was qualified for the position and that he was treated differently than others outside the protected class.

Initially, the Court will consider whether there is a genuine issue of material fact that Oliver was qualified for the Risk Consultant III position.  Federated contends that Oliver was not qualified for his position because he was not performing the job at a satisfactory level.  Generally, a plaintiff must demonstrate that he was performing at a level which meets his employer's expectations in order to satisfy the qualification prong of the prima facie case.  However, Federated has improperly relied on its on its nondiscriminatory reason for termination, *i.e.*, poor performance, to argue that Oliver was not qualified for the position.

In *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir. 2000), the Sixth Circuit addressed a similar argument by a defendant and, in doing so, established that the "qualified" prong of the prima facie case should be evaluated in light of the plaintiff's employment record "prior to the onset of the events that the employer cites as its reason" for its decision.  *Id.* at 662-63. Specifically, the court cautioned district courts not to use the "qualified" element of the prima facie case in order to heighten the plaintiff's initial burden.  More specifically, the Sixth Circuit held that "when assessing whether a plaintiff has met [his] employer's legitimate expectations at the prima facie stage . . . court[s] must examine plaintiffs' evidence independent of the nondiscriminatory reason produced by the defense as its reason for terminating plaintiff."  *Id.* at 660-61 (internal

---

[9]     Federated acknowledges that Oliver has established that he is a member of the protected class and that he suffered an adverse employment action.

quotation marks omitted).  Accordingly, the Court must look only at the evidence of Oliver's employment prior to the events that gave rise to his termination.  In this case, the Court must consider whether Oliver was qualified for his position prior to the events giving rise to his termination.

Federated contends that Oliver was not qualified for the position and that he was "repeatedly warned and advised that his performance was not meeting expectations."  Oliver worked for Federated for over 16 years.  Although Federated acknowledges that Oliver was a functional risk consultant for a significant part of his career, it asserts that it was unhappy with that Oliver from the beginning.  However, the record reflects that Oliver received positive performance evaluations for most of his career.  In fact, in many instances, Oliver received the "exceeds expectations" rating.  Further, the record reflects that Oliver was promoted and received numerous salary increases during his tenure with the company.

Olander, who supervised Oliver from approximately ten years, testified that Oliver was "a very reliable individual" and "a very good employee." [Record No. 26, p. 7]  The record does reflect, however, that Oliver's performance ratings declined over the last several years of his employment.  While Federated may have been dissatisfied with Oliver's overall performance, it did not contemporaneously document those findings in the performance evaluations.  The mere fact Oliver was told that he needed to make improvments in certain areas does not establish that he was not qualified for the position.  A jury may consider Federated's claim that Oliver displayed poor performance.  However, consideration of this evidence is not appropriate at the prima facie stage of the *McDonnell Douglas* test.  *See Cicero v Borg-Warner Automotive, Inc.*, 280 F.3d 579, 587-88 (6th Cir 2002) (citing *Cline*, 206 F.3d at 664 (noting with approval cases in which courts treat

evidence of poor work performance as evidence of an employer's legitimate, nondiscriminatory justification and not as prima facie evidence of qualification)).

Viewing the evidence of record independent of Federated's stated reason for terminating Oliver, the Court finds that there is sufficient evidence for a reasonable jury to conclude that he was qualified for his position.  While his record may not have been perfect, there is nothing to suggest that he did not possess the basic skills to perform his duties as Risk Consultant III.  Thus, the Court finds that Oliver has satisfied his prima facie burden of proving that he was qualified.

Next, Oliver must show *either* that Federated replaced him with a younger worker *or*, that Federated treated similarly situated, non-protected employees more favorably.  *Tuttle v. Metropolitan Government of Nashville*, 474 F.3d 307 (6th Cir. 2007); *Noble v. Brinker Int'l., Inc.*, 391 F.3d 715 (6th Cir. 2004).  Federated argues that Oliver has failed to present sufficient evidence under this prong because he has not demonstrated that "similarly situated employees outside of his protect class were treated differently."  [Record No. 18, p. 18]  However, the Court need not address this issue because Oliver has presented evidence that he was replaced by a substantially younger individual.  Specifically, the evidence of record demonstrates that, at the time of the termination Oliver was 56 years old and was replaced by Lonnie Platt, a man in his thirties.[10]  *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) ("Age differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of age discrimination prima facie case.")

---

[10]     Federated has conceded that Oliver was replaced by Platt and that he "cover[ed] the same territory as Mr. Oliver did."  [Record No. 18, p. 15]

-13-

For these reasons, the Court finds that Oliver has established a prima facie case of age discrimination.

### b.    Legitimate, Nondiscriminatory Reason

Under the next step of the *McDonnell Douglas* analysis, the burden shifts to Federated to "articulate some legitimate, nondiscriminatory reason" for Oliver's termination.  According to Federated, Oliver was terminated because of poor performance.  Specifically, Federated asserts that Oliver's job performance was not adequate inasmuch as he was deficient in various aspects of his job requirements.  Federated claims that, even after being place on a Performance Improvement Plan, Oliver was unable to successfully complete the goals set forth in the Plan, such as maintaining face time, eliminating delinquencies, and timely exporting work.  In addition, Federated notes that Oliver received poor job performance ratings on his latest evaluations and "was not meeting expectations especially for an employee with over 15 years seniority." [Record No. 31, p. 2]  These certainly qualify as legitimate, nondiscriminatory reasons for the company's actions.  *See Succarde v. Federal Express Corp.*, 106 F. App'x. 335, 339 (6th Cir. 2004) (poor performance is a legitimate, non-discriminatory reason for termination).  Because Federated has satisfied its burden of showing that it had a legitimate, nondiscriminatory reason for the termination, the burden shifts to Oliver to present sufficient evidence that Federated's proffered reason is merely a pretext for discrimination.

### c.    Pretext

Pretext can be established "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).  The first type of showing requires the plaintiff to present evidence demonstrating that "the reasons given by the

-14-

employer simply did not happen." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 471 (6th Cir. 2002). The third showing requires the plaintiff to present evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993). Regardless of the rebuttal method employed, the "plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001) (internal quotations and citations omitted). To show an honest belief, "the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998).

As set forth above, one way for Oliver to show that Federated's explanation is a pretext for discrimination is by demonstrating that the proffered reason had no basis in fact. Although Oliver does not dispute that his performance ratings declined over the years, he contends that his job performance did not deteriorate. Instead, he claims that Shockey was looking for ways to criticize and "get rid" of him. [Record No. 21, p. 30] However, the record reflects that Oliver's performance evaluations were declining prior to that time that Shockey began supervising Oliver.

Oliver also argues that his prior positive evaluations, promotions and salary raises demonstrate that Federated's articulated reason of poor performance had no basis in fact. While the

-15-

record does reflect that Oliver received numerous promotions and salary increases over the years, this "qualification" evidence was relevant to establish Oliver's prima facie case and has "no independent probative value on the issue of illegal discrimination." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1085 (6th Cir. 1994).  Although Oliver received positive evaluations during his tenure with Federated, this does not constitute evidence that Shockey (and Byers) evinced discriminatory intent by giving him less positive reviews, nor does it suggest that he was meeting Federated's expectations at the time he was terminated.  *See Zhuang v. Datacard Corp.*, 414 F.3d 849 (8th Cir. 2005);  *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 728 (8th Cir. 2001).  In *Erickson*, the Eighth Circuit noted that "[a]n employer may choose to rely on recent performance more heavily than past performance."  *Erickson*, 271 F.3d at 728-29.  In fact, the court stated that evidence of a positive review does not necessarily infer that a later negative job review was motivated by a discriminatory animus.  *Id*. at 728-29.

In *Peters v. Lincoln Elec. Co.*, the Sixth Circuit found that the plaintiff's affidavits from former supervisors and evaluations by a prior company president were insufficient rebut his employer's claim that the current management was displeased with his performance.  Specifically, the court noted that:

> [i]t is simply stating the obvious to observe that what may have satisfied one management regime does not necessarily satisfy its successor, and Plaintiff's proffered evidence does not serve to rebut Lincoln's **current** management's views regarding Peters' insufficient skills to continue performing in the Controller position. Elliott was specifically displeased with Plaintiff's failure to communicate with upper management to keep them abreast of Lincoln's financial situation, and the Plaintiff has not offered any evidence to refute this complaint.

*Peters*, 285 F.3d at 474 (emphasis in original).  Therefore, the fact that Oliver had satisfactory performance evaluations under the supervision of Bozsoki and Olander does not refute Federated's

evidence that the current management was displeased with his performance. The record clearly reflects that Oliver's performance deteriorated over the last three years of his employment. Even in the job performance evaluations by Olander upon which Oliver relies heavily, there is evidence that Federated was dissatisfied with Oliver's performance in certain areas. For all these reasons, the Court finds that the evidence of record evidence establishes that Federated's proffered reason has a basis in fact.

Oliver also attempts to show pretext by presenting evidence that Federated's proffered reason, *i.e*, poor performance, was insufficient to warrant his termination. Under this method of proof, a plaintiff "ordinarily [presents] . . . evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Peters*, 285 F.3d at 471. In determining whether the plaintiff has offered sufficient evidence that similarly situated, significantly younger employees were treated more favorably, the Sixth Circuit instructs that the court must first identify the appropriate comparable group of similarly situated employees and then determine if there is evidence to support the assertion that the defendant treated these significantly younger employees better than it treated the plaintiff, because of the plaintiff's age. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). A plaintiff must "demonstrate that he or she is similarly-situated to the non-protected employee in all relevant respects." *Id*. at 353. For example, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their

-17-

conduct or the employer's treatment of them for it." *Id.* at 352 (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).

Oliver alleges that Tim Mager, a Risk Consultant in his late 20's to early 30's, averaged approximately the same number of days to export work but was not placed on a Performance Improvement Plan. However, Oliver has failed to present evidence that Mager was a similarly situated individual. Specifically, he has not shown that Mager dealt with the same supervisor, had the same experience, or received declining performance reviews. Additionally, Oliver alleges that Cary Freed and Heather Long took more than five days to export work but were not placed on a Performance Improvement Plan. Not only has Oliver failed to establish that Freed and Long were outside the protected class, he has also failed to demonstrate that they were similarly situated. Oliver claims that they were in his region, but he has not alleged that they "dealt with the same supervisor, [were] subject to the same standards, or engaged in the same conduct without such circumstances that would distinguish their conduct or Federated's treatment of them. *See Ercegovich,* 154 F.3d at 352. Therefore, the Court finds that the comparables cited by Oliver are not similarly situated individuals that can be used in the *McDonnell Douglas* analysis.[11]

Oliver also attempts to show pretext by alleging that various employees made discriminatory age-related statements to or about him. *See Talley v Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995) ("[T]he plaintiff's evidence regarding racial slurs may also have been considered on the issue of whether [a defendant's legitimate, nondiscriminatory] reason was merely a pretext."). Again, Oliver references Coaker's statement that "[y]ou know, old guys like us, you

---

[11]     Oliver also generally claims that other individuals were not required to transmit their work by 5:00 p.m. each Friday or to average forty hours of face time per month. The Court notes, however, that Oliver has failed to identify these individuals or establish that they were similarly situated.

and me, we can't type as fast as those younger guys." [Record No. 30, p. 130; Record No. 23, p. 45]
Oliver contends that, because Coaker "played a role in the decision to terminate [him]," this age-
related statement constitutes evidence that Federated's proffered reason for the termination was a
pretext for discrimination. The Court disagrees. There is nothing about the statement itself or its
context that suggests that Coaker was making a veiled reference to the need to terminate older
employees. Moreover, even if the remarks are construed as a reference to age, any inference of
discriminatory intent is rebutted by the fact that the record supports Federated's claim it was
dissatisfied with Oliver's performance.

Oliver also claims that Shockey told him on at least two occasions that he should check into
early retirement. According to Oliver, these statements indicate that Shockey wanted to replace him
because of his age. In general, age-related comments, including suggestions of retirement, made by
persons with supervisory or decision-making power may be used to prove discriminatory intent. *See
e.g., Danielson v. City of Lorain*, 938 F.2d 681, 684-85 (6th Cir. 1991) (statement by supervisor that
plaintiff should consider retiring because of her age strong evidence of an illegitimate motive);
*McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (older employee told he could
be "cheaply replaced" by a younger man). However, not all comments relating to retirement provide
evidence of discrimination. Notably, "friendly" inquiries about retirement cannot usually support
a finding of age discrimination, *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243 (6th Cir. 1997), but
repeated and unwelcome inquiries may be relevant to a showing of age discrimination. *Leonard v.
Twin Towers*, 6 F. App'x 223, 230 (6th Cir. 2001).

In *Ercegovich*, the Sixth Circuit took a flexible approach to assessing the relevancy of
age-related remarks, noting that "courts must carefully evaluate factors affecting the statement's

probative value, such as 'the declarant's position in the corporate hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action[.]'" *Ercegovich*, 154 F.3d at 357 (citing *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3rd Cir. 1997)).

Initially, the Court notes that, at the time Shockey made the retirement inquiries, he was Oliver's immediate supervisor and would have had some input in the decision to terminate him. However, when Oliver was actually terminated in February 2006, Shockey was no longer his supervisor. Further, although Oliver suggests that Shockey's inquiries about retirement were unwelcome and made in a manner to pressure him to retire, Oliver has failed to present evidence demonstrating the exact nature of Shockey's retirement comments. With regard to the "temporal connection between the statement and the challenged employment action," the Court notes that even though Shockey's suggestion that Oliver should consider early retirement could constitute strong evidence of an illegitimate motive, the record clearly establishes that Oliver had a poor working record which was documented by at least two supervisors prior to the time that the alleged statement was made. In light of the timing of Shockey's retirement inquiries, the Court concludes that a reasonable fact finder could not find that Oliver's supervisors created a false paper trail for the purpose of dismissing him because of his age.

Finally, Oliver argues that a jury could find pretext because there is evidence demonstrating that the only individuals placed on a Performance Improvement Plan were those in the protected class. Specifically, Oliver states that Mark Dallolio, age 48, was placed on a Plan and ultimately terminated after he received a "NI" rating from Shockey. Moreover, Oliver claims that Shockey was "heavily recruiting younger people aged 23-28 . . . and that Shockey heavily recruited out of the

college [he] attended." [Record No. 21, p. 7]  This evidence, however, is insufficient to create a genuine issue of material fact of age discrimination.  In some instances statistical evidence is helpful to plaintiffs in establishing their case of age discrimination.  However, to support a charge of age discrimination, large statistical discrepancies are required before courts will attach any real significance to statistical evidence.  Oliver has not provided any evidence to support his allegation, and, therefore, his statistics are insufficient to demonstrate any pattern of age discrimination.  *See e.g., Hall v. Martin Marietta Energy Systems, Inc.*, 856 F. Supp. 1207 (W.D. Ky. 1994).  The fact that younger workers are hired and older workers leave or are not promoted does not, in and of itself, prove age discrimination.  *See Laugesen v. Anaconda Co.*, 510 F.2d 307 (6th Cir. 1975).

In the present case, Oliver does not dispute that his performance declined over the last several years of his employment with Federated.  Further, he admits that he was informed that he needed to make improvements in certain areas of his job performance but that he did not make those improvements.  He acknowledges that Olander and Shockey's critique of his performance was justified.  He claims, however, that he believed that the goals set forth in the performance evaluations were "aspirational" and that he would be afforded some "leeway" in making improvements.  [Record No. 18, Att. 6, pp. 46, 61]  While Oliver may have believed that he would not be held accountable for his deficiencies, the record clearly reflects that Federated was dissatisfied with his performance and made Oliver aware of the need to make improvements.  The fact that Oliver disagrees with the *manner* in which Federated handled the situation is not evidence that his failure to meet the company's standards was a pretext for discrimination.

In deciding whether a defendant's proffered reason for an adverse employment decision is pretextual, it is "the trial court's duty to review all of the facts together, not in isolation."  *Thurman*

*v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996).  Having considered Oliver's allegations in a light most favorable to him, the Court finds that he has failed to establish that a reasonable fact finder could find that poor work performance was merely a pretextual reason for his dismissal and that age was a determinative factor.  *See e.g., Danielson*, 938 F.2d at 681.

### B.     Wrongful Discharge

Federated has also moved for summary judgment on the wrongful discharge claim, asserting that it is preempted by the ADEA and KCRA claims because it is "premised upon the same alleged conduct as [those] claims." [Record No. 18, p. 16]  The Kentucky Supreme Court has established the following limitations to the wrongful discharge exception to the at-will employment doctrine:

> (1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.  (2) That policy must be evidenced by a constitutional or statutory provision.  (3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985).  Both ADEA and the KCRA make it unlawful for an employer to discharge an employee because of an individual's age. 29 U.S.C. § 621; K.R.S. § 344.040.  These statutes also provide the remedy available to the aggrieved party.  In *Grzyb*, the Kentucky Supreme Court found that K.R.S. § 344.040 would provide "the necessary underpinning" for a wrongful discharge suit based on sex discrimination, concluding that "[t]he statute not only creates the public policy but preempts the field of its application."  *Grzyb*, 700 S.W.2d at 401.  Further, in *Banister v. Commonwealth of Kentucky*, No. 5:04cv78R, 2005 WL 1214252 (W.D. Ky. May 20, 2005), the court, presuming that the plaintiff's wrongful discharge claim was based on facts similar to the plaintiff's claim of reverse race discrimination and age discrimination, concluded that because K.R.S. § 344.040 "both declares the unlawful act and specifies the civil remedy," the plaintiff was limited to a statutory remedy.  *Id*. at *8 (quoting *Grzyb*, 700 S.W.2d at 401).

In the present case, because Oliver's wrongful discharge claim is based on the same facts as the ADEA and KCRA claims, the Court finds that he is limited to a statutory remedy for his claim, which cannot survive summary judgment. *See Jones v. Kroger*, Inc., 2005 WL 2807194 (E.D. Ky. 2005).

## IV.    CONCLUSION

For the reasons discussed herein, it is hereby

**ORDERED** as follows:

1.      The Defendant's motion for summary judgment [Record No. 18] is **GRANTED**;

2.      The Plaintiff's claims pursuant to the Age Discrimination in Employment Act, the Kentucky Civil Rights Act and the state law claim for wrongful discharged are **DISMISSED**, with prejudice;

3.      The Plaintiff's motions in limine [Record Nos. 41, 42] are **DENIED**, as moot.

This 14th day of March, 2008.



Signed By:

*Danny C. Reeves*

United States District Judge